

70 West 40th Street | New York, NY 10018
T 212-719-4400 • F 212-719-4440

jcahill@CahillLawFirm.com

2018-May-23

**BY ECF WITH ELECTRONIC MAIL TO OPPOSING COUNSEL**

Honorable Katherine Polk Failla
United States District Judge, Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:   *AXA Art Americas Corp. v. Korine*, No. 1:18-CV-04444 (KPF)

Dear Judge Failla:

On behalf of Plaintiff AXA Art Americas Corp. ("AXA"), we respond to the request of Defendant Harmony Korine ("Korine") for a conference based on his counsel's assertion that the referenced action should be dismissed under the "first-filed" rule. It is Korine's Florida lawsuit that should be dismissed as untimely or, at best, subject to mandatory arbitration in New York. Korine filed the Florida lawsuit (1) in a misguided forum-shopping effort to repair his counsel's mistake in not filing suit in New York within the time allowed by the applicable insurance policy or, (2) if Korine's claims are not dismissed outright, to avoid mandatory arbitration by an "umpire" to be appointed by a New York court to resolve a dispute between the two New York-based art appraisers over the value of artworks that Korine claims are damaged.

AXA's complaint (Dkt. #1 Ex. 2) provides greater detail, but this is a relatively simple case. After a fire in Korine's home in Tennessee, he submitted a claim for damage to certain artworks. AXA paid professionals to restore some of the damaged artworks and, for those that were beyond repair, paid Korine their value—an amount totaling hundreds of thousands of dollars. Korine later claimed another $1.5 million in additional losses, including a "total loss" for a work that has been fully restored and certified as such by the artist who created it.

In July 2017, Korine's counsel sought AXA's agreement to toll the one-year time limit allowed by the insurance policy for filing suit. AXA declined to do so, but agreed, without prejudice, to try to resolve the disagreement over value through appraisers as required by the insurance policy. AXA retained an appraiser and then, after a long delay, so did Korine. The appraisers disagreed on the amount of the loss and—as required by the insurance policy—the appraisers met to try to resolve their differences. Korine's appraiser refused to discuss any points of disagreement so—as is also required by the Policy—an "umpire" was to be selected to resolve the appraisers' dispute. The parties exchanged lists of possible umpires, but Korine refused to entertain the appointment of any umpire with experience in art valuation matters; no agreement on an umpire was reached.

AXA then, again as the insurance policy requires, advised that it would have to seek to have the "umpire . . . ***selected by a judge of a court of record*** in [New York,] the state in which the appraisal is pending." (Compl. ¶ 15.b. (emphasis added).) AXA was willing to entertain the appointment of a qualified umpire who was not an appraiser or the use of an alternative dispute resolution service to expedite the process, but Korine then filed the Florida lawsuit, now claiming it is "first-filed."

**CAHILL** COSSU NOH & ROBINSON LLP

Hon. Katherine P. Failla
2018-May-23
Page 2 of 3

The first-filed rule has a number of exceptions. An "anticipatory" filing where, as here, "a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions" is one such exception, based on the sound policy reason "that [such a] party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit."[1] Another exception arises when a first-filer has "engage[d] in manipulative or deceptive behavior, or the ties between the litigation and the first forum [are] so tenuous or *de minimis*,"[2] that a Court may conclude that the second forum is more appropriate than the first. Both the manipulative behavior and the tenuous contacts with Korine's Florida forum are present here. Korine's expressed willingness to work through the umpire process has now been revealed as an effort to stall so that his law firm, which has no office in Florida but does have an attorney licensed to practice there, could file the Florida action.[3]

Should the Florida lawsuit not be dismissed as time-barred, that action should be transferred to New York in light of (i) the controlling law requiring the enforcement of arbitration provisions such as the one in the insurance agreement requiring resolution by an umpire where the appraisal is pending (here, New York), and (ii) the balance of convenience factors. The majority of the witnesses—including **both** AXA's **and** Korine's appraisers, as well as the artists, studio representatives, and professional conservators whose expert opinions are necessary to resolve the determination-of-loss—as well as the relevant documents and sources of proof are located in New York, as are both parties' counsel. Korine has by contrast, identified no relevant witnesses or evidence in Florida.[4]

As the issue to be resolved by an umpire is the loss in value of art and the issue to be resolved on the timeliness, etc., of Korine's claims is based on documentary evidence and well-established law, neither Korine nor anyone at AXA is likely to be a material witness, but to the extent that they are, (1) AXA's principal office is located here, as are the specific employees with knowledge relevant to this dispute and (2) Korine, a well-off film maker and artist whose work is regularly seen in New York, is a short plane flight away.

---

[1] *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, No. 12-CV-3858 (KMW), 2012 WL 2065294, at *2 (S.D.N.Y. June 7, 2012) (citation omitted); *see also AIDS Serv. Center of Lower Manhattan, Inc. v. PharmBlue LLC*, No. 14-CV-2792 (SAS), 2014 WL 3778200, at *3-4 (S.D.N.Y. July 30, 2014) (finding first-filed action to be anticipatory where first-filing plaintiff "led [second-filing plaintiff] to believe" that amicable resolution of the dispute was "possible" but "filed suit the same day in which it participated in active settlement discussions").

[2] *Michael Miller Fabrics, LLC*, 2012 WL 2065294, at *4 (S.D.N.Y. June 7, 2012) (citation omitted).

[3] Why Florida? While Korine argues—despite having only recently moved there—that Florida is his home forum, the obvious reason that his counsel shopped for that forum is a belief that Florida laws limiting the enforcement of time bars in insurance policies can reverse the error made in not making a timely filing. Both New York and Tennessee—the only two states from which the insurance policy can be said to have issued—require the enforcement of such time bars. As we will explain to the Court in which the Florida lawsuit was filed, it is the laws of Tennessee and New York that must be applied under the choice of law rules such that Korine's forum shopping should be in vain.

[4] *Compare Winterthur Intern. Amer. Ins. Co. v. Bank of Montreal*, No. 02-CV-6889 (RCC), 2002 WL 31521102, at *4 (S.D.N.Y.) (departing from first-filed rule, finding defendants' argument that case should be transferred "unavailing" where they failed to "clearly specify the key witnesses to be called and make a general statement of what their testimony will cover").

CAHILL COSSU NOH & ROBINSON LLP

Hon. Katherine P. Failla
2018-May-23
Page 3 of 3

As for the locus of operative facts: the insurance policy was approved and issued through AXA in New York. Communications concerning the policy and the damage took place in New York and in Tennessee. The mandatory appraisal process is pending in New York between two New York appraisers (including Korine's) and both parties' attorneys are based in New York. Because the policy was delivered to Korine, and the artwork was damaged, in Tennessee, Tennessee certainly has some connection to the operative facts. (The insurance policy has Tennessee endorsements and is governed by Tennessee law.) Florida, however, has none; its only connection to this matter is that Korine moved to Florida just *months* ago, in January 2018—*one and a half years after the Loss*. Korine's filing in Florida is not based on any true connection between the facts and Florida, but rather on the vain hope that a Florida court might disregard his late filing based on a Florida statute[5] meant to apply to Florida purchasers of Florida-issued insurance. As between New York and Florida, this factor weighs in favor of adjudication of the dispute in New York.

Further, Korine's claim that he is not subject to personal jurisdiction in New York is unsupportable. Not only has Korine been pursuing his claims entirely in New York, but he has long and regular contacts with this jurisdiction. Among other things, Korine is an artist who exhibits his work at New York galleries,[6] and also a film maker who shows, promotes, and makes films in New York. Most importantly, he transacted with AXA in New York in entering into the insurance agreement at issue in this case. He is thus subject to long-arm jurisdiction in New York.

The interests of justice also favor maintenance of the action here in New York, given the above-noted anticipatory filing and forum shopping by Defendant, as well as New York's "undoubted interest in regulating an insurance contract negotiated, executed, and administered in New York by a New York Company."[7] Just eight days passed between the commencement of this action and Florida lawsuit, warranting a "diminished degree of deference to the forum of the first filing."[8] The Florida lawsuit is no more procedurally advanced than this action. It should either be dismissed as untimely or result in an order compelling arbitration through appraisers and an umpire located here in New York. To allow Korine to pursue the Florida Action would waste judicial resources and countenance efforts to "game" adjudication of a narrowly focused, partially arbitrable dispute.

Very truly yours,

John R. Cahill

cc:   Jean Claude Mazzola, Esq.

---

[5] FLA. ANN. STAT. § 95.03.

[6] *See, e.g.*, Vito Schnabel, "Artists—Harmony Korine," available at http://www.vitoschnabel.com/artists/harmony-korine/biography (noting 2013 and 2015 exhibitions); Gagosian, "Harmony Korine," available at https://www.gagosian.com/artists/harmony-korine/artist-exhibitions (noting two 2014 exhibitions).

[7] *Amer. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 491 (S.D.N.Y. 2007) (quoting *Arch Specialty Ins. Co. v. Entm't Spec. Ins. Servs. Inc.*, No-04-CV-1852, 2005 WL 696897 (RCC), at *6 (S.D.N.Y. Mar. 24, 2005)) (denying motion to stay or transfer action filed by insurer).

[8] *Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 306 F. Supp.2d 346, 352-54 (S.D.N.Y. 2004).